**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION**

Heartwood, <u>et al.</u>,                    )
                                             )
                                             )
                   Plaintiffs,    )  Case No. 1:05-CV-313
                                             )
       vs.                               )
                                             )
                                             )
Gale Norton, Secretary,          )
United States Department      )
of Interior, <u>et al.,</u>              )
                                             )
                   Defendants.    )

<u>O R D E R</u>

        This matter is before the Court on Defendants' renewed
partial motion to dismiss pursuant to Rule 12(b)(1) of the
Federal Rules of Civil Procedure (Doc. No. 13), Plaintiffs'
motion to reassign (Doc. No. 9), and Plaintiffs' motion to file a
sur-reply (Doc. No. 18).  For the reasons that follow,
Defendants' partial motion to dismiss is well-taken and is
**GRANTED**; Plaintiffs' motion to reassign is not well-taken and is
**DENIED**; Plaintiffs' motion to file a sur-reply is **MOOT**.

        Plaintiffs in this case are eight non-profit
organizations whose common mission is the maintenance and
preservation of biodiversity in, and the protection of, various
of this country's national forests.  Defendants in this case are
Gale Norton, Secretary of the Department of Interior, the United
States Fish and Wildlife Service and its Director, Steve

Williams, and the United States Forest Service and its Chief, Dale Bosworth.

In the present lawsuit, Plaintiffs' collective attention is focused on the Indiana bat, also known in zoological circles as <u>Myotis sodalis</u>. The Indiana bat is a brown, medium-sized bat which occurs predominately in the eastern half of the United States. First Amended Complaint ¶¶ 17, 34. The Indiana bat was designated an endangered species in 1967. At about the time the Indiana bat was designated an endangered species, the estimated population was over 800,000. <u>Id.</u> ¶ 32. Today, however, the estimated population of the Indiana Bat is about 325,000. <u>Id.</u> ¶ 33. In 1983, the United States Fish and Wildlife Service approved a Final Recovery Plan for the Indiana bat pursuant to the Endangered Species Act. <u>Id.</u> ¶ 18. The goal of the Recovery Plan was to increase the population so the Indiana bat could be removed from endangered status. <u>Id.</u>

Indiana bats hibernate in humid caves or mines with cool, stable temperatures. <u>Id.</u> ¶ 25. If cave temperatures increase, or if they are disturbed by humans, the bats increase their consumption of stored fat during hibernation, which may result in starvation. <u>Id.</u> The complaint states that hundreds of thousands of Indiana bats have been destroyed because of vandalism to their hibernation caves. <u>Id.</u> Eighty-five percent of the population of Indiana bats hibernate in nine caves and

these have been designated as critical habitats in the Recovery Plan. <u>Id.</u> ¶ 31.

However, the Recovery Plan, which has not been revised since 1983, did not take into consideration the Indiana bat's non-hibernation habitat. <u>Id.</u> ¶¶ 24, 39. In the summer months, Indiana bats typically roost under the loose bark of dead or dying trees. <u>Id.</u> ¶¶ 27, 28. A colony of Indiana bats needs a territory with sufficient numbers of these kinds of trees for roosting. <u>Id.</u> ¶ 28. Additionally, the bats typically forage for insects in and around their forested habitat. <u>Id.</u> ¶ 29.

It is apparent from the complaint that Plaintiffs believe that disruption or destruction of its summer habitats has led to the continued decline of the Indiana bat. The complaint recounts a series of petitions filed with the Fish and Wildlife Service to revise the Indiana Bat Recovery Plan to designate summer roosting and maternity sites as critical habitat. <u>Id.</u> ¶¶ 35-44. The Fish and Wildlife Service, however, has rejected these petitions and stated that is has no intention of revising the critical habitat designations for the Indiana bat. <u>Id.</u> ¶ 45.

Another task of the Fish and Wildlife Service is to issue biological opinions when a proposed agency action may "jeopardize the continued existence of any endangered species." 16 U.S.C. § 1536(a)(2). Under regulations promulgated by the Secretary of Interior, "Jeopardize the continued existence of"

means "to engage in an action that reasonably would be expected, directly or indirectly, to reduce appreciably the likelihood of both the survival and recovery of a listed species in the wild by reducing the reproduction, numbers, or distribution of that species."  50 C.F.R. § 402.02 (2005).

Also at issue in this case are nineteen agency actions of the United States Forest Service which have been reviewed by the Fish and Wildlife Service.  In each case, the Fish and Wildlife Service has issued biological opinions which conclude that the proposed action of the Forest Service is not likely to jeopardize the Indiana bat.  The complaint alleges that these biological opinions are arbitrary and capricious under the Administrative Procedure Act for a number of reasons.  First, the complaint alleges that the Secretary's definition of "jeopardize the continued existence of," upon which the biological opinions are based, is contrary to the Endangered Species Act because an agency action will not cause jeopardy unless it threatens the species' survival <u>and</u> recovery.  The complaint alleges that the proper definition of jeopardy would be disjunctive so that an endangered species would be jeopardized where its survival <u>or</u> recovery is threatened.  <u>Id.</u> ¶¶ 55, 57, 72.

The complaint also alleges that the subject biological opinions are arbitrary and capricious because they use inconsistent standards in measuring the "take" of the project

4

i.e., the number of bats the action is authorized to destroy.  In some instances, take is measured in terms of alteration of acres of habitat whereas in others take is measured in terms of individual bats.  Id. ¶ 67.  The inconsistent take standard, the complaint alleges, makes it impossible to determine the impact of the Forest Service's projects on the species overall.  Id.

Finally, the complaint alleges that the subject biological opinions fail to consider the indirect effect on the species as a whole outside the area of the direct effects of the agency action.  The complaint alleges that each biological opinion fails to take into consideration the cumulative impact on the species of all of the previously-issued biological opinions.  The complaint also alleges that the biological opinions fail to consider logging on state and private lands where federal take requirements are not applicable.  This information is relevant, the complaint alleges, to assess the cumulative effect of the subject agency action on the overall population of the bat.  Thus, the complaint alleges, each of the subject biological opinions is arbitrary and capricious because it fails to properly assess the cumulative effect of the agency action in accordance with 16 U.S.C. § 1536(b)(4) and 50 C.F.R. § 402.02.  Id. ¶¶ 69, 70.

Plaintiffs' first amended complaint (Doc. No. 11) challenges both the Fish and Wildlife Service's refusal to

designate summer roosting areas of the Indiana bat as critical habitats and the series of nineteen biological opinions finding that proposed projects of the Forest Service are not likely to jeopardize the Indiana bat.  Plaintiffs also allege that the Secretary's definition of "jeopardize the continued existence of" is arbitrary and capricious on the grounds that it is contrary to the Endangered Species Act.  Plaintiffs bring their claims pursuant to the Endangered Species Act, 16 U.S.C. 1531, <u>et seq.</u>, and the Administrative Procedure Act, 5 U.S.C. § 702, <u>et seq.</u>

At the time Plaintiffs filed this lawsuit, another case, <u>Buckeye Forest Council v. United States Forest Service</u>, Case No. 1:04-CV-259 (S.D.Ohio), involving the Indiana bat and proposed Forest Service action in the Wayne National Forest was pending before Judge Dlott.  Plaintiffs moved the Court to reassign this case to Judge Dlott on the grounds that the issues in the two cases are similar and that judicial efficiency would be promoted by presenting the case to a judge already versed in the issues.  Defendants oppose the motion.  Since the time of filing of the motion, however, Judge Dlott has entered judgment in her case and it appears to be concluded.  This Court feels confident that it can come up to speed on the issues presented in relatively short order, and thus we see no reason to further burden Judge Dlott with the plight of the Indiana bat.

Accordingly, Plaintiffs' motion to reassign this case to Judge Dlott is not well-taken and is **DENIED**.

On July 26, 2005, Defendants filed a motion to dismiss certain aspects of Plaintiffs' first amended complaint pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure. Specifically, Defendants argue that the six year statute of limitations in 28 U.S.C. § 2401(a) bars Plaintiffs' challenges to four of the Fish and Wildlife Service's biological opinions as well as their challenge to the Secretary's definition of "jeopardize the continued existence of." The biological opinions in issue are the April 26, 1999 Biological Opinion for the Ouachita National Forest in Arkansas, the June 25, 1998 biological opinion for the Ozark-St. Francis National Forests in Arkansas, the June 2, 1992 Biological Opinion for the Shawnee National Forest in Illinois, and the September 16, 1997 Biological Opinion for the George Washington and Jefferson National Forests. Defendants originally moved to dismiss Plaintiffs' challenge to a fifth biological opinion but in their reply brief they concede that the statute of limitations has not expired on the June 1, 1999 Biological Opinion for the Allegheny National Forest in Pennsylvania.

In opposition, Plaintiffs argue that the statute of limitations has not expired on their challenges to these four biological opinions under a continuing violation theory. These

biological opinions are continuing violations, Plaintiffs argue, because the Forest Service uses them to authorize future projects in the forests that are the subjects of the opinions.  Plaintiffs further argue that the statute of limitations has not expired on their challenge to the Secretary's definition of "jeopardize the continued existence of" because they bring an "as-applied" challenge to the regulation rather than a facial challenge.  The Court, however, agrees with Defendants that these particular claims are barred by the statute of limitations.

The parties do not dispute that Plaintiffs may challenge the Fish and Wildlife Service's biological opinions under the Administrative Procedure Act ("the APA").  Furthermore, the parties do not dispute that the six year statute of limitations in 28 U.S.C. § 2401(a) applies to Plaintiffs' claims.[1]

Under the APA, a cause of action generally accrues at the time of a "final agency action."  Sierra Club v. Slater, 120

_____

[1]    Section 2401(a) provides:

Except as provided by the Contract Disputes Act of 1978, every civil action commenced against the United States shall be barred unless the complaint is filed within six years after the right of action first accrues.  The action of any person under legal disability or beyond the seas at the time the claim accrues may be commenced within three years after the disability ceases.

F.3d 623, 631 (6th Cir. 1997); 5 U.S.C. § 704.  A biological opinion of the Fish and Wildlife Service is a "final agency action" on the date of issuance.  Bennett v. Spear, 520 U.S. 154, 177-78 (1997).  Similarly, a cause of action challenging an agency regulation generally accrues when the regulation is published in the Federal Register.  Dunn-McCampbell Royalty Interest, Inc. v. National Park Serv., 112 F.3d 1283, 1287 (5th Cir. 1997).  Plaintiffs filed their original complaint on May 5, 2005.  Here, as Defendants correctly observe, the Secretary of Interior first published the definition of "jeopardize the continued existence of" in 1986.  See 50 Fed. Reg. 19,926 (June 3, 1986).  Moreover, the Fish and Wildlife Service issued the four designated biological opinions more than six years before May 5, 2005.  Thus, the initial indication is that Plaintiffs' challenges to both the designated biological opinions and the definition of "jeopardize the continued existence of" are barred by the statute of limitations.

Plaintiffs argue, however, that the statute of limitations has not expired on their challenge to the four biological opinions because they constitute continuing violations.  As noted, Plaintiffs state that the Forest Service continues to rely on these opinions in justifying additional projects in the forests covered by the opinions.  Defendants counter that this use of these biological opinions only

9

represents the continued ill effects of alleged illegal conduct, and thus no continuing violation is established.  The Court agrees.

A continuing violation essentially tolls the applicable statute of limitations.  McCune v. City of Grand Rapids, 842 F.2d 903, 905 (6th Cir. 1988).  A continuing violation, however, consists a continual series of illegal acts, not the continued ill effects of the original violation.  Id.  In this case, the biological opinions at issue represent single episodes of alleged illegal conduct on the part of the Defendant agencies.  Their use as precedent in other projects can only be considered to represent the continued ill effect of the fact that the agency issued the opinions in the first place.  In other words, the authorization of new projects is a consequence of the issuance of the original biological opinions but it is not a repetition of the specific conduct that led to the issuance of the opinions themselves.  See, e.g. Anderson v. City of Bristol, 6 F.3d 1168, 1175 (6th Cir. 1993)(indicating that a continuing violation is the repetition of a past illegal act).  Therefore, the biological opinions at issue are not saved from application of the statute of limitations under a continuing violation theory as a matter of law.  Therefore, discovery on this issue is not required. Whether the new projects referenced by Plaintiffs in their brief

were improperly authorized is a separate consideration which is not before the Court.

Plaintiffs also argue that their challenge to the definition of "jeopardize the continued existence of" in 50 C.F.R. § 402.02 is not barred by the statute of limitations because they bring an as-applied challenge. Plaintiffs are indeed correct that the limitations period does not commence on the date of agency action for an as-applied challenge. Labeling a cause of action as an as-applied challenge, however, does not make it so. The complaint belies the facial nature of Plaintiffs challenge to the definition promulgated by the Secretary. In their complaint, Plaintiffs allege that the definition of jeopardy adopted by the Secretary is inconsistent with the express requirements of the Endangered Species Act. See First Amended Complaint ¶ 72. This is an obvious indication that Plaintiffs are asserting a facial challenge to the definition. See Florida Keys Citizens Coalition, Inc. v. West, 996 F. Supp. 1254, 1256 (S.D.Fla. 1998)(holding that plaintiffs asserted a facial challenge to an agency regulation where they alleged that it was inconsistent with the enabling statute). Moreover, as Defendants again correctly argue, an as-applied challenge requires some allegation that the substance of an agency decision exceeds the agency's statutory or constitutional authority. Wind River Mining Corp. v. United States, 946 F.2d 710, 715 (9th Cir.

11

1991). Plaintiffs make no such allegation in this case. Accordingly, the Court can only conclude that their challenge to the definition of "jeopardize the continued existence of" is a facial challenge and thus is barred by the six year statute of limitations.

Conclusion

Accordingly, for the reasons stated, the Court concludes that Plaintiffs' challenge to the definition of "jeopardize the continued existence of" promulgated in 50 C.F.R. § 402.02 is barred by the six year statute of limitations in 28 U.S.C. § 2401(a). Additionally, the Court concludes that Plaintiffs' challenges to the following biological opinions issued by the Fish and Wildlife Service are barred by the statute of limitations: the April 26, 1999 Biological Opinion for the Ouachita National Forest in Arkansas, the June 25, 1998 biological opinion for the Ozark-St. Francis National Forests in Arkansas, the June 2, 1992 Biological Opinion for the Shawnee National Forest in Illinois, and the September 16, 1997 Biological Opinion for the George Washington and Jefferson National Forests. Therefore, Defendants' partial motion to dismiss (Doc. No. 13) is well-taken and is **GRANTED**. The Court has considered Plaintiffs' sur-reply brief but it does not change the result of the Court's decision. Accordingly, Plaintiffs' motion to file a sur-reply brief (Doc. No. 18) is **MOOT**.

Plaintiffs' motion to reassign this case to Judge Dlott (Doc. No. 9) is not well-taken and is **DENIED.**

                    **IT IS SO ORDERED**

Date  October 18, 2005              s/Sandra S. Beckwith
                         Sandra S. Beckwith, Chief Judge
                          United States District Court